1  GOODIN, MACBRIDE, SQUERI, RITCHIE & DAY, LLP
   ROBERT A. GOODIN, State Bar No. 061302
2  FRANCINE T. RADFORD, State Bar No. 168269
   505 Sansome Street, Suite 900
3  San Francisco, California 94111
   Telephone:    (415) 392-7900
4  Facsimile:    (415) 398-4321

5  Attorneys for The Ministry of Finance of the Russian Federation and
   Gokhran as Successor in Interest to The Committee of the Russian
6  Federation on Precious Metals and Gems

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 ─────────────────────────────
   THE MINISTRY OF FINANCE OF THE              Case No.   C 03 - 1401 EMC
12 RUSSIAN FEDERATION and GOKHRAN,
   as successor in interest to the COMMITTEE    COMPLAINT FOR DECLARATORY
13 OF THE RUSSIAN FEDERATION ON                 RELIEF
   PRECIOUS METALS AND GEMS,
14
                  Plaintiffs,
15
   v.
16
   Rajiv GOSAIN, an individual, Mai VU, an
17 individual, MVA Resources, Inc., a/k/a MVA,
   Inc., a California corporation, and Irina
18 KOZLENOK, an individual,
19                Defendants.
   ─────────────────────────────
20
         For its complaint, THE MINISTRY OF FINANCE OF THE RUSSIAN
21
   FEDERATION and GOKHRAN, as successor in interest to the COMMITTEE OF THE
22
   RUSSIAN FEDERATION ON PRECIOUS METALS AND GEMS (collectively, "Gokhran")
23
   allege:
24
                               **OVERVIEW**
25
         1.      The Clerk of this Court is in possession of the outstanding shares of
26
   Golden ADA, Inc., as a result of a prior interpleader action, Graham & James LLP v. Golden
27
   ADA, Inc., et al., Case No. C-96-1582 (JLQ).  Although a stipulated judgment and dismissal was
28



                                          GOKHRAN'S COMPLAINT FOR
                                          DECLARATORY RELIEF

1   entered in that case, with this Court reserving jurisdiction to hear further disputes, no order

2   directing the Clerk of the Court to release the shares was ever issued.  A number of disputes have

3   since arisen regarding ownership of the shares and performance of the settlement agreement that

4   was entered into by the parties to the interpleader action.  As a result, an actual controversy

5   presently exists over which this Court has jurisdiction, authorizing relief under 28 U.S.C. § 2201.

6          2.      Plaintiff Gokhran seeks a declaratory judgment that it is entitled to

7   ownership of the outstanding shares of Golden ADA, Inc., free and clear of any liens or claims,

8   and an order directing the Clerk of the Court to deliver all such shares and share certificates

9   which are currently in its possession to Gokhran.

10  **PARTIES**

11         3.      Plaintiffs THE MINISTRY OF FINANCE OF THE RUSSIAN

12  FEDERATION and GOKHRAN, as the successor in interest to the COMMITTEE OF THE

13  RUSSIAN FEDERATION ON PRECIOUS METALS AND GEMS, are agencies of the Russian

14  Federation.

15         4.      Plaintiff is informed and believes and on that basis asserts that defendant

16  Rajiv GOSAIN is an individual with his principal place of residence in the City and County of

17  San Francisco.

18         5.      Plaintiff is informed and believes and on that basis asserts that defendant

19  Mai VU is an individual with her principal place of residence in or around San Jose, California.

20         6.      Plaintiff is informed and believes and on that basis asserts that defendant

21  MVA RESOURCES, INC., also known as MVA, Inc. ("MVA"), is a corporation under the laws

22  of the State of California, with its principal place of business in San Jose, California.

23         7.      Plaintiff is informed and believes and on that basis asserts that Irina

24  KOZLENOK is an individual with her principal place of residence in Cupertino, California.

25  **CERTAIN NON-PARTIES**

26         8.      Golden ADA, Inc., operating primarily in the City and County of San

27  Francisco, was in the business of importing, manufacturing, and selling diamonds and other

28  precious gems, minerals, and metals.  Golden ADA, Inc. and its subsidiaries are presently in

GOODIN, MACBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

1   liquidation pursuant to the provisions of Chapter 7 of the Bankruptcy Code, under the

2   management of Trustee Charles Sims, in the Bankruptcy Court of the Northern District of

3   California, In re Golden ADA, Inc., Nos. 97-30879 DM, 9730877 DM and 97-30880 DM.

4           9.     Andrei Kozlenok was among the original shareholders of Golden ADA,

5   Inc. and is the ex-husband of defendant Irina Kozlenok.  In or around August, 1995, Andre

6   Kozlenok assigned or otherwise conveyed his shares in Golden ADA, Inc. to defendant Gosain.

7   Plaintiff is informed and believes and on that basis asserts that Kozlenok was arrested in Greece

8   in or around January, 1997 and transported to Russia for incarceration in June of 1998.

9   Kozlenok's counsel in Belgium and defendant Irina Kozlenok have stated that Kozlenok remains

10  in custody in Russia.  VU and MVA claim to be assignees of the interest of Kozlenok in the stock

11  of Golden ADA, Inc.

12          10.    James D. Sumner has served as counsel of record in various actions for

13  Andrei Kozlenok, Irina Kozlenok, Mai Vu, and MVA.  The State Bar of California currently lists

14  him as resigned with charges pending.  Sumner is listed as the designated agent for service of

15  process for MVA in filings with the California Secretary of State.

16  **JURISDICTION**

17          11.    The Court has jurisdiction over this proceeding based on 28 U.S.C. 1331

18  and 28 U.S.C. §1332(a)(4).

19  **THE INTERPLEADER ACTION**

20          12.    On April 29, 1996, the law firm of Graham & James, which had

21  represented Golden ADA, Inc., filed an interpleader action in this Court, Graham & James LLP v.

22  Golden ADA, Inc., et al., Case No. C-96-1582 (JLQ).  Graham & James deposited with the Clerk

23  of this Court a number of shares and share certificates of Golden ADA, Inc.  Gosain and Andrei

24  Kozlenok filed cross-complaints in the Interpleader Action, each asserting that he was the owner

25  of Golden ADA, Inc. and entitled to possession of the share certificates, and stating various tort

26  and contract claims against the other.

27          13.    Gokhran, originally named as a defendant in the Interpleader Action, was

28  dismissed as a party in or around August, 1996.

GOODIN, MacBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

14.     The Interpleader Action was settled after settlement conferences on August 12 and October 25, 1996.  Although Irina Kozlenok was present at the settlement conference on October 25, 1996, Andrei Kozelnok was not.  The Kozlenok's attorney of record, James Sumner, did attend the settlement conference.

15.     A written Settlement Agreement effective October, 1996 was entered into between Andrei Kozlenok, Irina Kozlenok, Rajiv Gosain, and Golden ADA, Inc. (the "Interpleader Settlement").  A true and correct copy of the Interpleader Settlement is attached as Exhibit A hereto.  Gokhran, having been previously dismissed from the action, was not a signatory to this settlement.  The Interpleader Settlement provided in relevant part:

a)     The Court was to enter an order dismissing the interpleader action and directing the Clerk to deliver the share certificates to Golden ADA, Inc., upon which Golden ADA, Inc. would cause the outstanding shares to be cancelled.

b)     Furthermore, in consideration and on condition of Kozlenok performing a number of terms of the settlement, Gosain agreed to assign to Kozlenok Golden ADA, Inc. Share Certificate No. 7, evidencing ownership of 14,016 shares in the company, following which Gosain was to direct the company to issue a replacement certificate in Kozlenok's name for the same number of shares.

c)     The Interpleader Settlement provided that it was not assignable by any party without the consent of all other parties.

d)     This Court was to retain jurisdiction over any disputes arising out of the settlement.

16.     Although an order dismissing the interpleader action without prejudice was entered, the Court did not ever enter an order directing the Clerk to release the share certificates to Golden ADA, Inc.

17.     In or around October, 1997, Kozlenok prepared a declaration stating that he did not consent to the terms of the settlement in the Interpleader Action, and that Mr. Sumner had acted without his authority in entering into the settlement.

GOODIN, MacBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

18.     Upon information and belief, Kozlenok did not perform his obligations under and acted in breach of the Interpleader Settlement, including but not limited to the alleged assignment of his interests thereunder to Mai Vu and/or MVA, without the written consent of all other parties.

## GOLDEN ADA, INC. BANKRUPTCY

19.     On February 25, 1997, involuntary bankruptcy petitions were filed against Golden ADA, Inc. and its subsidiaries ("Debtors" or the "Estates") in the Northern District of California, In re Golden ADA, Inc., Nos. 97-30879 DM, 9730877 DM and 97-30880 DM by a number of creditors including MVA.  The cases were consolidated, and on August 5, 1997, Charles E. Sims was named Trustee of the Chapter 7 Estates.

20.     Gokhran, Gosain, the Internal Revenue Service and others asserted a variety of claims against the Estates.  By settlement with the Estates and the IRS effective March 30, 1998, Gokhran became the residuary creditor of the Estates with an allowed secured claim of approximately $165 million arising from an earlier stipulated judgement obtained by Gokhran against Golden ADA, Inc. in this Court, Case No. C95-3449 (JLQ).

21.     On July 8, 1999, Gokhran entered into a further settlement agreement with Gosain and the Trustee on behalf of the estates (the "Gosain Settlement").  Pursuant to the Gosain Settlement, Gosain released his claims and liens against the Estates, and further agreed to transfer to Gokhran "free and clear of all liens and interests, all of Gosain's right, title and interest on all of the outstanding shares of Golden ADA, Inc. as well as all of the outstanding shares of any other affiliate of Golden ADA, Inc. which he may hold, together with any and all rights associated therewith."  A true and correct copy of the Gosain Settlement is attached as Exhibit B hereto.

22.     The Gosain Settlement was subject to the approval of the Bankruptcy Court.  Objections to the settlement were submitted in the name of Mai Vu, MVA, Inc. and Andrei Kozlenok.  After briefing and argument, on August 31, 1999, the Bankruptcy Court approved the settlement, holding that Vu, MVA, and Kozlenok did not have standing to object, and further noted that the order approving the settlement simply authorized "the Trustee to enter

GOODIN, MacBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

into the Settlement Agreement and carry out the terms applicable to him.  This Court is not ruling on any terms pertaining to the agreements between Gosain and Gokhran."

23.     As a result of the Gosain Settlement, Gokhran is entitled to ownership of the Golden ADA, Inc. shares that are presently in the possession of the Clerk of the Court.

### MOTION TO ENFORCE THE INTERPLEADER SETTLEMENT

24.     In or around August, 1999, James Sumner, claiming to represent Andrei Kozlenok, brought a motion in the Interpleader Action for an order enforcing the settlement and compelling Gosain to transfer 1,000 shares of Golden ADA, Inc. to Mr. Kozlenok.  Given that the Interpleader Settlement on its face provides for transfer of over 14,000 shares, it is unclear, and no explanation was offered, why Sumner's moving papers requested transfer of only 1,000 shares.

25.     The Trustee and counsel for Gosain objected to the motion, arguing, inter alia, that Mr. Sumner failed to timely serve his motion on all parties to the Interpleader Settlement and was representing Vu and MVA, and not Mr. Kozlenok, because Mr. Kozlenok was incarcerated in Russia and had not been able to communicate with Mr. Sumner.

26.     The Trustee further stated that it was "appropriate and consistent with the intent and spirit of the [Gosain] Settlement that Gokhran receive the Golden ADA shares since the Bankruptcy Court has ordered that Gokhran is to receive the residual value of the Golden ADA estates after allowed claims have been satisfied."

27.     This Court denied the motion to compel transfer of Golden ADA shares to Andrei Kozlenok.

### FIRST CLAIM FOR RELIEF

### DECLARATORY RELIEF

28.     Plaintiffs incorporate paragraphs 1-27 as if set forth fully herein.

29.     The foregoing events constitute an actual controversy under 28 U.S.C. § 2201.

30.     Gokhran is entitled to a declaratory judgment that:

GOODIN, MacBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

1     a)      Gokhran is the owner of all outstanding shares of Golden ADA,

2   Inc., free and clear of any liens or claims;

3     b)      Defendants have no ownership interest in Golden ADA, Inc. arising

4   from the Interpleader Settlement, any purported assignment, or otherwise;

5     c)      The Clerk of the Court shall deliver all shares and share certificates

6   of Golden ADA, Inc. to Gokhran.

7     Wherefore, Plaintiff prays for relief as set forth below.

8                          **PRAYER FOR RELIEF**

9     WHEREFORE, Gokhran prays for judgment in its favor and against the

10   Defendants, and each of them, as follows:

11     1.      Declaring that Gokhran is the owner of all outstanding shares of Golden

12   ADA, Inc. and is entitled to possession of all share certificates evidencing ownership in Golden

13   ADA, Inc., and that Defendants have no right, title, or interest in the ownership of Golden ADA,

14   Inc.; and,

15     2.      Granting such other and further relief as the Court deems to be just and

16   proper.

17   Dated:  April 1, 2003                    GOODIN, MACBRIDE, SQUERI,
                                              RITCHIE & DAY, LLP
18

19

20   By _____
                    Robert A. Goodin
21   Attorneys for The Ministry of Finance of the
     Russian Federation and Gokhran as Successor
22   in Interest to The Committee of the Russian
     Federation on Precious Metals and Gems
23

24   2748/001/X37674-1

25

26

27

28

GOODIN, MACBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOKHRAN'S COMPLAINT FOR
DECLARATORY RELIEF

CONFIDENTIAL BY COURT ORDER

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT is entered into this __ day of October, 1996 (the "Execution Date") among ANDREI KOZLENOK, IRINA KOZLENOK, RAJIV GOSAIN and GOLDEN ADA, INC., a California corporation.

### RECITALS

WHEREAS, The Committee of the Russian Federation for Precious Metals and Gems ("The Committee") has sued Golden ADA, Inc. and various parties asserting a liability in excess of $150 Million, in an action captioned *The Committee etc. v. Golden ADA, Inc., Andrei Kozlenok, etc., Case No. C95-3449-JLQ*. The Committee and Golden ADA have entered into a Settlement Agreement and Mutual Release (the "Committee Settlement Agreement"). The parties hereto desire that Golden ADA be permitted to implement and fulfill the terms of that settlement. The debt owed to The Committee renders Golden ADA insolvent; and

WHEREAS, the Internal Revenue Service has asserted a tax liability against Golden ADA, through the enforcement of a jeopardy assessment, in an amount exceeding $50 Million. The parties hereto desire that Golden ADA be permitted to resolve such tax assessment, through litigation or settlement; and

WHEREAS, a dispute has arisen regarding the ownership of certain shares of common stock of Golden ADA, Inc. In an interpleader action, captioned *Graham & James LLP v. Golden ADA, Inc., et al., Case No. C96-1528 JLQ* (the "Interpleader Action"), certain parties hereto assert claims to ownership and control of Golden ADA. The parties hereto desire to resolve the disputes among them and to cause the dismissal of the Interpleader Action.

NOW, THEREFORE, in consideration of the promises and performance set forth herein, the parties agree as follows:

1.    Dismissal of Cross-Complaints. Within two (2) days of the Execution Date, Irina Kozlenok, Andrei Kozlenok and Rajiv Gosain shall dismiss with prejudice their respective cross-complaints in the Interpleader Action.

2.    Dismissal of Interpleader. Within two (2) days of the Execution Date, by stipulation of the parties, in the form of Exhibit A, attached hereto, the parties shall authorize the Court to dismiss the Interpleader Action and to order that the shares of the Corporation now held by the Clerk of the Court be delivered to the Corporation and be canceled on the books of the Corporation. In addition, the stipulation shall provide that

- 1 -

Exhibit A

CONFIDENTIAL BY COURT ORDER

the Court shall retain jurisdiction for the purposes of implementation and supervision of the settlement.

3.     Settlement with The Committee. Within (2) days of the Execution Date, the Board of Directors of Golden ADA shall resolve that Gosain, as a duly authorized representative of Golden ADA (or as an officer of the Corporation if required), shall have the authority to implement and complete the Committee Settlement Agreement . The form of resolution of the Board of Directors is attached hereto as Exhibit F. Gosain shall not have the power to modify the Committee Settlement Agreement on behalf of Golden ADA, without the prior written approval of Andrei Kozlenok. Gosain shall have the power to take all actions necessary to transfer, pursuant to the Committee Settlement Agreement, the assets of Golden ADA and its subsidiaries to a receiver or such other parties as directed by the receiver or the Court. The grant of authority to Gosain shall be irrevocable by the Corporation for and during a period commencing June 1, 1996 and ending on the 391st day thereafter (the "Consulting Period").

4.     IRS Tax Assessment. Within (2) days of the Execution Date, the Board of Directors of Golden ADA shall resolve that Gosain, as a duly authorized representative of Golden ADA (or as an officer of the Corporation if required for IRS purposes), shall have the authority to take all actions necessary and appropriate to resolve, including by way of settlement, the tax assessments against the Corporation and any of its subsidiaries, including the IRS tax assessments for 1993 and 1994, consistent with the terms of the Committee Settlement Agreement. The grant of authority to Gosain shall be irrevocable by the Corporation for and during the Consulting Period. Gosain shall have the authority to execute powers of attorney to appoint law firms and other individuals to represent the Corporation before the IRS, the United States Tax Court and other taxing authorities or tribunals. Gosain or his agents shall, upon reasonable written request from Kozlenok, provide a status report to Kozlenok regarding the negotiations with the IRS. Irina Kozlenok warrants and represents that she has not and will not file or initiate any action or claim against the IRS regarding the tax assessments against Golden ADA, provided however that she may continue to assert any claim against the IRS for recovery of her personal property wrongfully seized by the IRS, as alleged in that certain action entitled _Kozlenok v. IRS,_[insert caption]).

5.     Waiver of Claims. Irina Kozlenok and Andrei Kozlenok, jointly and severally, waive, discharge and release any and all claims they may have now or in the future, whether known or unknown, arising from any act or omission by Gosain or anyone acting at his direction, including any director, officer, employee or agent of Golden ADA or its subsidiaries, in furtherance of or related to: (a) the settlement with The Committee and the transfer of any assets of Golden ADA and any of its subsidiaries pursuant to the Committee Settlement Agreement; and (b) the resolution, whether by settlement or otherwise, of the tax liabilities and assessments against Golden ADA and any of its subsidiaries.

## CONFIDENTIAL BY COURT ORDER

Irina Kozlenok, Andrei Kozlenok and Rajiv Gosain each hereby waive, discharge and release each other from any and all claims each may have against the other arising from (1) their respective ownership or operation of Golden ADA, Inc., or any of its subsidiaries, or (2) any agreement or other understanding among or between them relating to Golden ADA or any of its assets or activities.

The parties hereto understand, and, on advice of counsel, agree that all rights under Section 1542 of the California Civil Code and any similar law of the United States or any state or territory of the United States are hereby expressly waived. Section 1542 reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The parties understand and acknowledge the significance and consequence of the waiver of Section 1542 and hereby assume full responsibility for all damages, losses or liabilities arising from the matters herein waived and released.

6.   _Dismissal of Bankruptcy Actions._  Simultaneously with the execution of this Settlement Agreement, Irina Kozlenok and Andrei Kozlenok shall execute a stipulation for the dismissal of any and all bankruptcy proceedings against Golden ADA and any of its subsidiaries. The stipulation shall be in the form of Exhibit B, attached hereto. The parties and counsel shall take all appropriate steps to effect the dismissal of such proceedings and to give such notice as may be required.

7.   _Belgium Proceedings and Any Action re Assets._  Simultaneously with the execution of this Settlement Agreement, Golden ADA, Andrei Kozlenok and Irina Kozlenok shall execute the instrument, attached hereto as Exhibit C, to cause the removal of the provisional administrator as appointed by the Belgium Court on December 1, 1995, and the dismissal and final resolution of any and all proceedings in Belgium initiated by either of the Kozlenoks claiming any interest in the ownership of or the assets of Golden ADA or any of its subsidiaries, including Golden CalBel, Inc., Golden ADA Belgium N.V., and Shako Real Estate Management N.V.  Irina Kozlenok and Andrei Kozlenok agree to take any action or execute additional instruments as may be appropriate and necessary, as requested by the Committee's or Golden ADA's Belgium counsel, to cause the dismissal and final resolution of any such actions.

8.   _Covenant Not to Sue re Assets._  Andrei Kozlenok and Irina Kozlenok hereby agree not to commence or prosecute any administrative or judicial action or proceeding, in any country, including without limitation, the United States, Belgium or Switzerland, claiming any ownership of or interest, direct or indirect, in any asset of Golden ADA or any of its subsidiaries, unless (1) such action is explicitly permitted by this

Agreement, or (2) the asset is listed on Exhibit G hereto as one to which Kozlenok claims to be property owned by Kozlenok personally.

9.     Authorized Belgium Action.  Upon satisfaction of the Asset Transfer Condition, described below, Andrei Kozlenok may, directly or through Golden ADA Belgium, N.V., commence a judicial action against The DeBeers Group, or any of its affiliates ("DeBeers"), claiming that DeBeers caused damages to Golden ADA Belgium N.V. (the "Authorized Belgium Action").  Kozlenok agrees that the Authorized Belgium Action shall not name, implicate, or otherwise involve Gosain or Andrei Chernukhin in his capacity as a director or agent for Golden ADA or any of their respective agents or representatives.

9.1.    Asset Transfer Condition.  Kozlenok shall not initiate the Authorized Belgium Action until all assets of Golden ADA Belgium N.V. and Shako Real Estate Management N.V. have been transferred out of said corporations and that the only asset of said corporations is the claim, if any, against DeBeers or any of its affiliates ("Asset Transfer Condition").  As may be requested by counsel for The Committee or Golden ADA, Kozlenok or his agents shall execute such documents or instruments as may be necessary to transfer all of the Belgium assets to The Committee or its designated entity.  The satisfaction of this condition shall be certified by the receiver, appointed pursuant to the Committee Settlement Agreement, to the Court and the parties.  Upon such certification, Kozlenok may initiate the Authorized Belgium Action.

10.    Right of First Refusal.  To the extent such rights are still legally available as of the date hereof, Gosain has a "right of first refusal" to acquire (a) 999 Brannan Street, San Francisco ("Brannan Property"),  (b) certain diamond-processing equipment installed at the Brannan Property ("Diamond Equipment"),  (c) 747 19th Street, San Francisco("19th Street"), and (d) 349 27th Ave., San Francisco ("27th Street") (collectively and individually referred to as the "Sale Property"), pursuant and subject to the Committee Settlement Agreement  and Gosain's Consulting Agreement with The Committee.  Provided Kozlenok is not then in default of this Settlement Agreement and upon presentation to Gosain of Kozlenok's First Refusal Notice, as defined below, Gosain shall exercise his right of first refusal to purchase the property identified in the First Refusal Notice.  At the closing of Gosain's acquisition of such property, and upon Kozlenok's full payment of all costs and expenses, Gosain shall convey such property, "as is" and without any warranties whatsoever, to Kozlenok.

10.1.   Kozlenok's First Refusal Notice.  Within three (3) days of Gosain's receipt of notice from the receiver of his intended sale of a Sale Property and the right of Gosain to exercise his right of first refusal, Gosain shall give notice ("Gosain's Sale Notice") to Kozlenok, to the fullest extent received by Gosain, of the terms and conditions of such intended sale.  In order to cause Gosain to exercise his right of first refusal to acquire a Sale Property, Kozlenok shall, within forty (40) days after the date of service of Gosain's Sale Notice, do the following:

CONFIDENTIAL BY COURT ORDER

a.   Give written notice (the "First Refusal Notice") to Gosain of Kozlenok's unconditional commitment to acquire the Sale Property; accompanying the First Refusal Notice shall be a written, unconditional commitment from a lending institution to loan to Kozlenok or his assignee not less than 80% of the purchase price of the Sale Property.

b.   Deposit with First American Title Company, San Francisco, or another mutually acceptable title company, the following amounts: (1) the full earnest money or down payment required under the purchase contract; (2) 5% of the purchase price to cover closing costs, insurance, etc., for both Gosain's acquisition and Kozlenok's acquisition; (3) an additional as follows:  Two Percent (2%) of the purchase price of the Brannan Property if the purchase price is equal to or less than $3.5 million to acquire the Brannan Property, Four Percent (4%) of the purchase price of the Diamond Equipment, and/or One Percent (1%) of the purchase price of any other Sale Property.

c.   Deposit with the escrow company, on or before the fifth (5th) day before the closing, all funds required to complete Gosain's acquisition and then Kozlenok's acquisition of the property, including without limitation all funds from any lending institution. The amount of such deposit shall be prescribed by preliminary settlement statements prepared by the escrow company for both Gosain's and Kozlenok's acquisition of the property.

d.   Execute such documents as may be necessary and appropriate to close the transaction, as requested by Gosain's counsel or the title company.

10.2.   Payment on Closing.  At closing, Kozlenok shall pay from the escrow deposit, in goods funds, to Gosain a sum equal to 2% of the purchase price of the Brannan Property if Kozlenok acquires the Brannan Property for a purchase price of equal to or less than $3.5 Million, 4% of the purchase price of the Diamond Equipment, and/or a sum equal to 1% of the purchase price of any other Sale Property.  All costs arising from or related to the exercise of the right of first refusal and the acquisition of the properties shall be paid by Kozlenok at or before the closing, without any cost or expense to Gosain. Kozlenok agrees and warrants that no funds advanced by Kozlenok shall have been derived from Golden ADA, Inc., or from the sale or disposition of its assets by Kozlenok or anyone on his behalf.

CONFIDENTIAL BY COURT ORDER

11.      Conveyance of Shares.  Subject to the performance or compliance by Kozlenok of the matters set forth in Sections 1, 2, 6, 7, 8, 9.1, and 11.3, and the procedures set forth below, Gosain hereby agrees to and shall assign, for no consideration, to Kozlenok Certificate No. 7, evidencing ownership of 14,016 shares (the "Gosain Shares") of the common stock of Golden ADA, Inc.  The parties acknowledge that Golden ADA is insolvent and that the Shares are worthless.

11.1.    Issuance of Certificate.  Within five (5) days from the date of the Completed Transfer of Assets, as defined below, Gosain shall execute stock powers for the Gosain Shares, to authorize the Corporation to cancel his certificate and issue the same amount of shares to Kozlenok.  Golden ADA shall issue a new certificate for 14,016 shares in the name of Andrei Kozlenok, an unmarried individual.  Kozlenok's certificate shall bear appropriate legends as required by California law.  Upon issuance, the stock ledger of the Corporation shall record Andrei Kozlenok as the owner of 100% of the outstanding shares of common stock of the Corporation.

11.2.    Completed Transfer of Assets.  Attached hereto as Exhibit D is a schedule of assets of Golden ADA, Inc., and its subsidiaries, for which title is held in the name of Golden ADA, Inc. or one of its subsidiaries.  This Schedule of Assets may be supplemented by any of the parties or by The Committee upon identification or discovery of additional assets of Golden ADA or its subsidiaries.  The parties hereto acknowledge that Golden ADA, pursuant to the Committee Settlement Agreement, has the obligation to transfer control and/or ownership of all assets on the Schedule of Assets to the receiver appointed pursuant to the Committee Settlement Agreement.  Gosain, as an officer of Golden ADA, has the duty to cooperate in effecting such transfer.   Gosain agrees to exercise his best efforts to cause the transfer of the assets as promptly as practical after entry of judgment and the appointment of the receiver pursuant to the Committee Settlement Agreement.  For purposes of Section 11.1, the "Completed Transfer of Assets" shall be deemed to occur upon the first to occur of the following:  (1) certification by the receiver that all assets listed on the Schedule of Assets have been transferred to the receiver; or (2) the expiration of 30 days from the date of the order appointing the receiver pursuant to the Committee Settlement Agreement.  Pursuant to the consent of The Committee, the order appointing the receiver shall be presented to the Court no later than November 8, 1996.

11.3.    Covenant Not to Assert Shareholder Status.  As a condition to the issuance and validity of the certificate provided under Section 11.1, Kozlenok agrees that during the Consulting Period, Kozlenok shall not cause or permit, as a shareholder, director or officer of Golden ADA or any of its subsidiaries (1) any revocation, reduction or interference with the grant of authority to Gosain under Sections 3 and 4 above, or (2) any interference or hindrance with the implementation of the Committee Settlement Agreement.

12.      Joint Venture Income Allocation.  Irina Kozlenok, Andrei Kozlenok and Rajiv Gosain are entitled to receive certain income as part of a joint venture, as set forth in

CONFIDENTIAL BY COURT ORDER

that Joint Venture Agreement attached hereto as Exhibit E., The source of that income shall be the consulting fees payable under that certain Consulting Services Contract between The Committee and Rajiv Gosain, dated May 28, 1996. Pursuant to the Consulting Agreement and the order appointing a receiver, the income earned thereunder shall be paid by the court-appointed receiver and deposited into a special joint venture account.

    12.1.  Tax Responsibility and Withholding.  Each party shall be individually responsible and liable for the tax liabilities attributable to each party's receipt of its share of the joint venture income.  To the extent reasonably required by applicable law, rule or regulation, sufficient funds shall be withheld in the joint venture account for tax payments or withholdings, with any remainder distributed upon final resolution of any such tax matters.

    12.2.  Allocations.  Upon deposit of the funds into the special joint venture account and subject to the tax withholding adjustment described above, the funds available for distribution shall be allocated as follows:  14.5% to Irina Kozlenok up to a maximum of $500,000; 14.5% to Andrei Kozlenok up to a maximum of $500,000; and the balance to Gosain or his assignee.  Upon application of the parties to the Court, the Court may authorize the court-appointed receiver to administer the joint venture account or to make distributions directly from the receiver's account.

    13.  Litigation Costs.  Each party shall bear its own costs and attorneys' fees incurred in the Interpleader Action and the Bankruptcy proceedings.

    14.  No Representations and Warranties re Shares.  Gosain makes no representations or warranties to Kozlenok regarding the Shares or the condition of Golden ADA, Inc. or any of its subsidiaries.

    15.  Kozlenok's Independent Investigation.  Andrei Kozlenok warrants and represents that he has independent knowledge of the Corporation prior to the consummation of this transaction and that he relies on no representations of Gosain except those specific representations contained in this Agreement.

    16.  Assumption of Liabilities.  Andrei Kozlenok hereby agrees to assume as his own any and all liability and duty which was or may attach to the ownership of the Shares as of the time of transfer to Kozlenok.

    17.  Indemnification.  Andrei Kozlenok and Irina Kozlenok, jointly and severally, agree to indemnify and hold harmless Gosain against any and all claims, losses, expenses, costs, obligations and liabilities Gosain may incur or suffer by reason of Kozlenok's failure to perform any obligation, duty or liability imposed upon Kozlenok hereunder or by reason of Andrei Kozlenok's ownership of the Shares or by reason of the Authorized Belgium Action.  Gosain hereby agrees to indemnify and hold harmless Andrei Kozlenok and Irina Kozlenok against any and all claims, losses, expenses, costs,

- 7 -

CONFIDENTIAL BY COURT ORDER

obligations and liabilities Kozlenok may incur or suffer by reason of Gosain's failure to perform any obligation, duty or liability imposed upon Gosain hereunder or by reason of Gosain's ownership of the Shares.

18.     Assignments.  This Agreement shall not be assignable by any party hereto without the prior written consent of all other parties.

19.     Costs and Attorneys' Fees.  If any party hereto shall bring any suit or action arising against the other for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court costs and disbursements, such sum as the court may adjudge to be reasonable attorneys' fees.

20.     Amendment and/or Modification.  Neither this Agreement nor any term or provision hereof may be changed, waived, discharged, amended, modified or terminated orally or in any manner other than by an instrument in writing signed by all of the parties

21.     Entire Agreement.  This Agreement contains the sole and entire Agreement and understanding of the parties with respect to the entire subject matter hereof.  Any and all prior discussions, negotiations, commitments and understandings related thereto are merged herein.

22.     Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the respective parties and their successors, assigns, heirs and personal representatives.

23.     Documents.  Each party to this Agreement shall perform any and all acts and execute and deliver any and all documents as may be necessary and proper under the circumstances in order to accomplish the intents and purposes of this Agreement and to carry out its provisions.

24.     Paragraph Headings.  The paragraph headings are for convenience only and in no way define, limit, extend or interpret the scope of this Agreement or of any particular paragraph hereof.

25.     Invalidity.  In case any term of this Agreement shall be invalid, illegal, or unenforceable, in whole or in part, the validity of any of the other terms of this Agreement shall not in any way be affected thereby.

26.     Survival of Representations and Warranties.  Notwithstanding any investigation by any of the parties before or after execution of this Agreement, the representations and warranties set out herein shall survive closing.

- 8 -

CONFIDENTIAL BY COURT ORDER

27.    <u>Law</u>.  This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California, irrespective of the fact that any one of the parties is now or may become a resident of a different state or country.  Venue for any action under this Agreement shall lie in San Francisco, California.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date and year first above written.


RAJIV GOSAIN _____          ANDREI KOZLENOK _____

                                                GOLDEN ADA, INC.


IRINA KOZLENOK _____          By: _____

RLL:hs/sa:2425/L/96-0618r6

- 9 -

TRUSTEE/GOSAIN/GOKHRAN SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement"), dated as of July 8, 1999, is entered into by and between Charles E. Sims ("Trustee"), the Chapter 7 Trustee of the estates (the "Estates") of Golden ADA, Inc. ("Golden ADA"), Shako Real Estate Management, Inc. ("Shako Real Estate") and Shako Energy, Inc. ("Shako Energy"), the Debtors in substantively consolidated Chapter 7 bankruptcy cases pending in the United States Bankruptcy Court for the Northern District of California, Nos. 97-30879 DM, 97-30877 DM and 97-30880 DM ("the Bankruptcy Cases"); Rajiv Shah Gosain ("Gosain"); and The Ministry of Finance of the Russian Federation and Gokhran, as successor in interest to the Committee of the Russian Federation on Precious Metals and Gems (collectively "Gokhran"). The Trustee, Gosain, and Gokhran are collectively referred to as "the Parties." Golden ADA, Shako Real Estate and Shako Energy are collectively referred to as "the Debtors."

Recitals

A.  On February 25, 1997, involuntary bankruptcy petitions were filed against the Debtors in the United States Bankruptcy Court for the Northern District of California, commencing the Bankruptcy Cases.  On April 18, 1997, the Bankruptcy Cases were ordered consolidated for purposes of administration.  On August 5, 1997, orders for relief were entered, and the Charles E. Sims was appointed Trustee in the Bankruptcy Cases.

B.  Gosain has asserted several claims against the Estates, which are listed on Exhibit A hereto (the "Gosain Proofs of Claims").  The Bankruptcy Court has entered orders (a) disallowing all of Gosain's unsecured claims against the Estates, pursuant to 11 U.S.C. § 502(d), but reserving judgment as to the validity of any and all liens asserted by Gosain against property of these Estates (the "Gosain Liens"); (b) disallowing Gosain's $10 million claim against the Estates for alleged rights of first refusal.  Gosain has appealed the order disallowing Gosain's $10 million claim against the Estates for rights of first refusal.  Gosain and the Trustee have decided to settle the claims evidenced by the Gosain Proofs of Claims, together with the Gosain Liens and any and all other claims that Gosain may have against the Debtors, the Trustee or these Estates, in law or in equity, (the "Gosain Claims").

C.  Gosain has also filed a suit in the United States District Court for the Northern District of California entitled "Rajiv Shah Gosain v. The Ministry of Finance of the Russian Federation, et al.," No. C-98-3716 VRW (the "Gosain/Gokhran Action").  Gosain has

12976852                         -1-

Exhibit B

also filed a Motion to Intervene and a proposed Complaint in Intervention in an action entitled "The Committee of the Russian Federation on Precious Metals and Gems v. Golden ADA, Inc., et al.," No. C-95-3449 JLQ, also pending in the United States District Court for the Northern District of California (the "Committee Action").

   D.   The Parties have evaluated the claims and disputes among them and have concluded that it is in each of their interests to settle their claims and disputes on the terms and conditions set forth in this Agreement.

<u>Agreement</u>

   NOW THEREFORE, the Parties hereby agree as follows:

   1.   <u>Settlement of the Gosain Claims.</u>  The Gosain Claims shall be resolved as follows:

   a.   The Trustee shall transfer to Gosain, free and clear of liens and interests, all of the Estates' title, right and interest in all of the outstanding shares (consisting of 37.05 fully paid and non-assessable shares) of Rubin & Son Jewelry Supplies U.S.A., Inc., together with all rights (such as rights associated with the covenants not to compete included in the June 30, 1994 Stock Purchase Agreement between Golden ADA, Leon Rubin and Peter Michaels (the "Rubin Stock Agreement"), causes of action the Trustee might have against third parties arising out of or in connection with the aforementioned stock and the Rubin Stock Agreement, and the exclusive use of the name "Rubin & Son, Diamond and Jewelry Supplies U.S.A." to the extent that any such rights exist.

   b.   Gosain shall transfer to Gokhran's designee, free and clear of liens and interests, all of Gosain's right, title and interest on all of the outstanding shares of Golden ADA, Inc. as well as all of the outstanding shares of any other affiliate of Golden ADA, Inc. which he may hold, together with any and all rights associated therewith.

   2.   <u>Releases and Dismissal of Action</u>

   a.   Upon the Effective Date (as defined in Section 3), the Trustee shall dismiss with prejudice all adversary proceedings against Rajiv Gosain.

   b.   Upon the Effective Date, Gosain shall dismiss with prejudice all claims and litigation filed against the Estates and/or Gokhran, including, without limitation, all actions by Gosain against the

12976852                              -2-

Trustee in the U.S. Bankruptcy Court, the Gosain/Gokhran Action and the Committee Action, including a withdrawal with prejudice of Gosain's motion to intervene in the Committee Action.

c.  Upon the Effective Date, all Gosain Claims shall be deemed disallowed. All Gosain Liens against assets of the Debtors' estates shall be released, deemed disallowed and void ab initio.

d.  As of the Effective Date, for valuable consideration the receipt of which is hereby acknowledged, Gosain for himself, his affiliates, successors, heirs, executors, employees, administrators and assigns (collectively, "Affiliates"), release, and forever discharge any and all claims relating to or arising from, directly or indirectly, Golden ADA or any of its subsidiaries, known and unknown against the Debtors, the Estates, the Trustee and Gokhran, their past and present Affiliates, successors, employees, administrators, attorneys and assigns, and each of them, separately and collectively, and agree not to assert any claims, known or unknown, against the Debtors, the Estates, Gokhran, the Trustee or the Trustee's professionals.

e.  As of the Effective Date, for valuable consideration, the receipt of which is hereby acknowledged, the Trustee and Gokhran, on behalf of the Estates, releases, acquits, and forever discharge Rajiv Gosain, his past and present Affiliates, successors, attorneys and assigns, and each of them, separately and collectively, of and from any and all claims relating to or arising from, directly or indirectly, Golden ADA or any of its subsidiaries which the Trustee, the Estates or Gokhran might have had in the past, or now have; provided, however, that in the event Gosain knowingly and intentionally fails to disclose any asset to the Trustee, the releases in this paragraph 2(e) shall be void.

f.  The Trustee, Gokhran, and Gosain expressly waive all rights under California Civil Code section 1542, which provides that:

    "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement

with the debtor."

3.    <u>Bankruptcy Court Approvals and Orders</u>.   This Agreement shall be of no force or effect unless a final, non appealable order is entered by the U.S. Bankruptcy Court for the Northern District of California approving each and every term of this Agreement.   This Agreement shall become effective only upon the entry of such order and the satisfaction of the condition set forth in Section 4 below (the "Effective Date").

4.    <u>Condition Precedent to Effectiveness of Agreement</u>.   This Agreement shall not be effective unless and until the conditions set forth in the letter dated as of July 8, 1999 between the Trustee and Gosain have been satisfied.

5.    <u>Cooperation</u>.   Each of the Parties shall execute and deliver to any other Party such other instruments and take such other actions as may be required to effectuate the terms of this Agreement.   The Parties shall cooperate with each other and Gosain shall use his best efforts to resolve any other pending claims in the Bankruptcy Cases, including, without limitation, making himself available on a reasonable basis for interviews and depositions without process.   Gosain shall be compensated for any reasonable incidental expenses incurred in connection with interviews and depositions, such as copying and mileage payments at the rate prescribed under Federal law.   However, Gosain shall not be compensated for air fare for either coming into or leaving California and shall make himself available in California at reasonable intervals or available, when he is in areas outside of California, for telephone depositions and interviews.

6.    <u>No Admission</u>.  The Parties acknowledge that this Agreement and the settlement and resolution of claims herein represents a compromise of contested claims and shall not be construed as an admission of liability or fault by any Party.

7.    <u>No Assignment</u>.   The Parties each represent and warrant they have not assigned or transferred or purported to assign or transfer to any third party any claim, cause of action, obligation or liability, of whatsoever character, nature or kind, in law or in equity, past, present or future, known or unknown, suspected or unsuspected, from the beginning of time to the date hereof, relating to the Gosain Claims, or any related claims or rights.

8.    <u>Disputes</u>.  In the event that any Party institutes any action or proceeding to enforce any provision of this Agreement or for damages by reason of any alleged breach of this Agreement, or for a declaration of rights or obligations under this Agreement, or for any other remedy, such action or proceeding shall be filed in the U.S. Bankruptcy Court for the Northern District of California.

The prevailing party, whether at trial or on appeal, shall be entitled, in addition to such other relief as may be granted, to be reimbursed by the losing party for all costs and expenses incurred therein, including but not limited to its reasonable attorneys' and accountants' fees and costs for the services rendered to such prevailing party.  The Parties consent to the jurisdiction of the U.S. Bankruptcy Court for the Northern District of California.

9.  <u>Binding on Successors</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective representatives, successors and permissible assigns.

10.  <u>Advice of Counsel</u>.  The Parties have read and understand this Agreement and mutually warrant and represent that this Agreement is executed voluntarily and without duress upon the part of or on behalf of any Party hereto.  The Parties further acknowledge that they have been represented by independent legal counsel of their own selection, that they have reviewed this Agreement, and that they are fully aware of its contents and have been advised of its legal effect.

11.  <u>Entire Agreement</u>.  This Agreement, including the exhibits hereto and other documents referenced herein, constitutes the sole and entire agreement and understanding of the Parties hereto with respect to the matters set forth herein.  Any and all prior discussions, negotiations, covenants, commitments, representations, warranties, understandings and/or documentation related hereto are expressly merged herein.  No representations, oral or written, express or implied, other than those contained herein, have been made by any Party.  No other agreements not specifically referred to herein, oral or written, and in the documents referred to herein which implement the provisions hereof, shall be deemed to exist or to bind the Parties to this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein and superseded hereby.

12.  <u>Waiver and Modification</u>.  No provision of this Agreement may be waived unless in writing signed by each of the Parties to this Agreement.  The waiver of any one provision of this Agreement shall not be deemed to be a waiver of any other provision of this Agreement.  This Agreement may be modified or amended only by a written agreement executed by each of the Parties and approved by an order of the Bankruptcy Court which has become final and non-appealable.

13.  <u>Severability</u>.  The provisions of this Agreement are deemed contractual, not mere recitals, and shall be considered severable, such that if any provision or part of this Agreement shall at any

12976852                                    -5-

time be held, under any law or ruling, to be invalid, such provision or part shall remain in force to the extent permitted by law, and all other provisions shall remain in full force and effect and duly enforceable.   In the event that any covenant, condition or other provision herein contained is held to be invalid, void, or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of the Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision herein contained.   If such condition, covenant or other provision shall be deemed invalid due to its scope and breadth, such covenant, condition or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

14.   <u>Drafting of Agreement</u>.   In the event of litigation concerning the terms of this Agreement, this Agreement shall be deemed jointly drafted by all parties, and the provisions of California Civil Code § 1654 shall not apply.

15.   <u>Good Faith</u>. This Agreement is entered into in good faith by all of the Parties and was negotiated through arms-length bargaining.

16.   <u>Governing Law</u>.   This Agreement has been negotiated and entered into in the State of California, and shall be governed by, construed and enforced in accordance with the internal laws of the State of California, applied to contracts made in California by California domiciliaries to be wholly performed in California.

17.   <u>Warranty of Authority</u>.   Each individual signing this Agreement on behalf of any entity represents and warrants that he or she has the right, power, legal capacity and authority to enter into and perform each of the obligations specified under this Agreement, and that no further approval or consent of any person, board of directors, governmental representative or entity is necessary for such person to enter into, execute and perform each of the obligations set forth under this Agreement.

18.   <u>Time of Essence</u>. Time is of the essence for the execution and approval of this Agreement by all parties and the Bankruptcy Court, and in the performance of all the obligations set forth herein.

19.   <u>Captions and Interpretations</u>.   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference only, and in no way define, limit, extend or described the scope of this Agreement or any provision hereof.   No provision in this Agreement is to be interpreted for or against either party because that party or its legal representative drafted such a provision.

20.  Number and Gender.  Whenever the singular number is used herein and when required by the context, the same shall include the plural; the masculine, feminine and neuter gender shall include the others; and the word "person" shall include corporation, firm, partnership, joint venture, trust or estate.

21.  Counterpart Signatures; Execution and Exchange of Hard Originals.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which when taken together shall constitute but one and the same instrument.  Facsimile signatures acceptable, followed by exchange of executed originals by mail.

22.  Defaults.  In the event of any default, failure to perform or breach of this Agreement, the parties agree to promptly notify the defaulting, failing to perform or breaching party in writing and undertake to cure or perform the applicable term, provision or condition of this Agreement, or to effectuate or implement such term, provision or condition, without further delay or variance from the requirements of this Agreement.  In the event of any continuing default, failure to perform or breach, the parties may invoke the jurisdiction of the Bankruptcy Court (Northern District of California) to compel the performance or otherwise seek an appropriate remedy with respect to this Agreement.

23.  Notices.  All notices required to be given under the terms of this Agreement shall be delivered by facsimile and regular U.S. Mail or DHL Courier to the respective parties at the following addresses listed below:

Mr. Charles E. Sims
P.O. Box 1247
Sonoma, CA 95476

Mr. Charles E. Sims
c/o Andrea A. Wirum, Esq.
    Pillsbury Madison & Sutro LLP
    P.O. Box 7880
    San Francisco, CA 94120-7880

State Fund of Precious Metals and Gems
    of the Russian Federation, Storage
    Release and Utilization of Precious
    Metals and Gems (Gokhran of Russia)
1812 Goda Street, 14
121170 Moscow, RUSSIA

State Fund of Precious Metals and Gems
  of the Russian Federation, Storage
  Release and Utilization of Precious
  Metals and Gems (Gokhran of Russia)
c/o Robert A. Goodin, Esq.
    Goodin, MacBride, Squeri, Ritchie & Day, LLP
    505 Sansome Street, Suite 900
    San Francisco, CA 94111

Rajiv Gosain
c/o Ison Law Offices
Neil Ison, Esq.
60 South Market Street
Suite 1100
San Jose, CA 95113

Any change of address for any party or its counsel shall be provided to the other parties hereto and their respective attorneys in writing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates opposite their respective signatures below.

Dated: July 21, 1999    By: _____
                             CHARLES E. SIMS, Trustee

Dated: July 21, 1999    By: _____
                             RAJIV GOSAIN

Dated: July 21, 1999    THE MINISTRY OF FINANCE OF THE RUSSIAN FEDERATION AND GOKHRAN AS SUCCESSOR IN INTEREST TO THE COMMITTEE OF THE RUSSIAN FEDERATION ON PRECIOUS METALS AND GEMS

                         By: _____

                         Its: _____

12976852                    -8-

## EXHIBIT A TO SETTLEMENT AGREEMENT:
## GOSAIN PROOFS OF CLAIMS

### Index

| Tab | Claim |
| --- | --- |
| 1 | Amount due for collection action in India on behalf of Rubin & Son.  Unsecured, unspecified amount.  Docket #58. |
| 2 | Amount due for loss of options to purchase 4130-34 Happy Valley and Unit 19.  Unsecured, unspecified amount.  Docket #59. |
| 3 | Amount due for termination of lease and property loss of 4130-34 Happy Valley Road.  Unsecured, estimated $100,000.  Docket #65. |
| 4 | Amount due under employment agreement.  Unsecured, $2,433,250.  Docket # 66. |
| 5 | Amount due for Rubin & Son salary and expenses.  Unsecured, $434,667.52.  Docket #68. |
| 6 | Amount due for Consulting Services agreement.  Secured ($3.5 million), and unsecured ($100,000).  Docket #69. |
| 7 | Amount due for guarantee of Rubin & Son leases and expenses.  Unsecured, unspecified amount.  Docket #70. |
| 8 | Amount due for indemnity fund under settlement agreement.  Secured, $3 million.  Docket #73. |
|  | Amendment of 4/29/98 (attaching additional documents). Docket 109 |
| 9 | Amount due for loss of rights of first refusal on equipment, real property and personal property.  Unsecured, $10 million.  Docket #81. |
| 10 | Amount due for charges properly owed by Golden ADA.  Unsecured, about $15,000.  Docket #106. |
| 11 | Amount due for personal guarantee to Intergest.  Unsecured, $230,000.  Docket Number 34. |

12976852